**Warren L. MOCK and Mary Judy Mock, Plaintiffs-Respondents,**

v.

**J.W. GITHENS COMPANY, a Missouri corporation, Defendant-Appellant.**

**No. 14138.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 29, 1986.

Motion for Rehearing or to Transfer to Supreme Court Denied, Oct. 14, 1986.

Application to Transfer Denied Nov. 18, 1986.

C.H. Parsons, Jr., Dennis P. Wilson, Parsons, Mitchell, & Wilson, P.C., Dexter, for plaintiffs-respondents.

James A. Cochrane, III, Dale E. Gerecke, Finch, Bradshaw, Strom & Steele, Independence, for defendant-appellant.

TITUS, Presiding Judge.

In this jury tried case, the Honorable Rex A. Henson, of the Thirty-Sixth Judicial Circuit, Division I, Ripley County, Missouri at the close of all the evidence directed a verdict on the issue of defendant J.W. Githens Company's liability for actual damages in favor of Warren L. Mock and Mary Judy Mock, plaintiffs. The issues which were submitted to the jury consisted solely of what was the amount of plaintiffs' actual damages and what if any punitive damages should be awarded against defendant. Defendant does not appeal the propriety of the directed verdict here. The jury returned a verdict granting plaintiffs $87,500 actual damages and no punitive damages and a judgment was entered thereon.

The issues on this appeal do not require a detailed description of the facts. It suffices to say that defendant, while constructing a railroad overpass bridge on Route WW in the City of Poplar Bluff, Butler County, Missouri in accordance with a contract entered into with the Missouri Highway and Transportation Commission caused damage to plaintiffs' real estate and the improvements thereon.

Defendant has raised two points of error in this appeal. We need not address the

second of these due to our disposition of the first.[1]

In its first point defendant alleges two errors on the part of the court below. First, that the trial court erred in permitting plaintiffs to elicit testimony from defendant that it had filed an action for indemnity against other named parties (including the Missouri Highway and Transportation Commission), and second, that the court nisi erred in permitting plaintiffs' counsel in his closing argument to assert that defendant could recover its damages from these other named parties because such arguments instilled in the minds of the jurors the idea that defendant was not interested in the outcome of the case and would ultimately pass the burden onto the other named parties.

As to the allegedly erroneous admission of evidence, the following occurred out of the hearing and presence of the jury:

MR. PARSONS: So that there won't be any misunderstanding at this point in time based on Mr. Cochrane's [2] opening statement that we brought the lawsuit against the wrong people I intend to inquire, unless the Court directs me otherwise, as to Mr. Githens as to whether or not he does have a lawsuit against other people to show his interest in the outcome of this and particularly since Mr. Cochrane has opened it up by his statement in the opening statement.

THE COURT: Now I can hear you.

MR. PARSONS: Okay. My motion is that we had a pre-trial matter about whether or not I could mention or inquire of witnesses about the third party claims of Mr. Githens against other people. My contention now, Judge, is that that has now been opened up by the opening statement of the defense counsel that we brought the suit against the wrong party and that's their defense. It's obvious from his opening statement that they are trying to deny any responsibility and I am entitled now to inquire as to the third party claim that Mr. Githens has brought to show his interest and his theory of the denial of the lawsuit.

THE COURT: We are not going to get to that until Friday, are we?

MR. PARSONS: I'm going to call him as the first witness.

THE COURT: All right.

MR. COCHRANE: On what basis are you going to allow him?

THE COURT: I think you opened the door.

MR. COCHRANE: For what reason?

THE COURT: If he puts your client on the witness stand he can ask him about the other lawsuits since you brought up about him suing other people.

MR. COCHRANE: I brought up that he sued the wrong person.

THE COURT: Yes, sir.

MR. COCHRANE: Why is that now relevant?

THE COURT: You don't know?

MR. COCHRANE: No, sir.

THE COURT: We will take it up at the recess.

In addition, in a previous proceeding in the judge's chambers, Judge Henson asked:

THE COURT: Doesn't it show his interest in the outcome of this case and the Jury has the right to know what his interest in the case is if he is shifting the blame to somebody else?

The actual admission into evidence of the information concerning the action for indemnity took place as follows:

[Mr. Parsons:] Q. Now, immediately after this lawsuit was filed against you you filed a lawsuit against the Missouri Highway Department and the City of

1. Defendant's second point alleged the trial court erred in allowing a witness to testify as plaintiffs had failed to disclose, in answers to interrogatories, the witness as an expert witness or as a person having knowledge of the nature, extent and duration of their damages and defendant was surprised and prejudiced thereby.

2. Wherever in the quoted portion of the transcript the name "COCHRAN" has been found it has been corrected to "COCHRANE".

Poplar Bluff and a Mr. Dolson, who is an engineer, did you not?

MR. COCHRANE: Judge, I object to the question as being totally irrelevant.

THE COURT: Overruled.

[Jay Githens:] A. Yes, sir.

Q. And you are asking them to pay you for any damages that this Jury may award to Mr. and Mrs. Mock in that lawsuit, aren't you?

A. Yes, sir, I suppose so.

Q. All right. I believe that's all.

■ We agree with Judge Henson and plaintiffs that the evidence was relevant and admissible. When a witness takes a position and gives testimony which could be motivated by his interest in the outcome of another suit, as here where the defendant attempted to place the blame on third parties against whom he had filed an action for indemnity, the jury is entitled to know about that interest and consider it in evaluating his testimony. The extent to which such an examination may go must be left largely to the discretion of the trial court. *Olsten v. Susman,* 391 S.W.2d 328, 331[8] (Mo.1965). Here the evidence of the third-party petition was relevant to show motive or bias of the witness and we cannot therefore find any abuse of discretion by the trial court in overruling defendant's objection, which objection was simply that the evidence was "totally irrelevant."

In the second half of defendant's first point, it is alleged that the trial court erred in permitting plaintiffs' counsel to assert in his closing argument that defendant could recover its damages in its suit against other named parties. We agree.

A portion of plaintiffs' counsel's argument went as follows:

MR. PARSONS: ... Now, you know there are things that happen in law and courtrooms that are some times hard to understand, but you will recall this morning, if you will, that the first witness I called to the stand was Jay Githens, yesterday morning, and you know before you can go into high school you have to graduate from grade school and some times in the law things are just like that.

Before Jay Githens can ever sue the State Highway Department and the City of Poplar Bluff and the engineers in St. Louis he has got to graduate from grade school. He has got to get sued here by Mr. and Mrs. Mock and there has to be a determination by you twelve ladies and gentlemen as to what Mr. and Mrs. Mock's damages are.

MR. PARSONS: ... And then if you recall, and that's exactly what I'm telling you has happened. No matter what award you bring in for Mr. and Mrs. Mock and against Mr. Githens' construction company, his words were that 'I have filed a lawsuit for any lose [sic] I may have in this case against the Highway Department, the City of Poplar Bluff and their engineers from St. Louis.

MR. COCHRANE: Judge, I raise an objection and request that be stricken for the reason there is absolutely no guaranty [sic] that Mr. Githens will recover a dime from that suit, especially if it's for punitive damages.

THE COURT: Objection will be overruled. You may proceed.

MR. PARSONS: You all heard what Mr. Githens said and I'm telling you ladies and gentlemen of the Jury that this is the time that we tell other—You see who has been interested in this lawsuit all day. You see who has been hanging around for two days. The Highway Department. And *this is the time that you tell them* that you don't treat people like Warren Mock and Judy Mock, who are good God fearing people who tried to make a living, like dirt. And you don't bring appraisers here that say that they are unsavory characters and *this is the time and the place when you are here to send a message to the Highway Department and the City of Poplar Bluff* and how do you do it. You *make an award for the plaintiffs against Mr. Githens' company* for punitive damages. The same way you did, ladies and gentlemen, and the same way my mother and dad did me, *you spank them* hard and maybe they won't treat anybody else

again like they have treated Mr. and Mrs. Mock. Thank you. (Emphasis ours.)

Following defendant's closing argument, plaintiffs' counsel continued along the same line of argument as demonstrated by the following:

MR. PARSONS: ... Now, did you hear Mr. Cochrane tell you if Jay Githens sues. What do you mean if? What did Jay Githens tell you? He told you that immediately after we sued him he sued the Highway Department, the City of Poplar Bluff, and the engineers in St. Louis so that whatever he loses he can recover.

MR. COCHRANE: I object. He didn't say he could recover. That's not the testimony.

THE COURT: Sustained.

MR. PARSONS: Let me put it to you this way, what he said was, and I wrote it down, he had filed a lawsuit, for any lose [sic] he may have in this case, against those folks. *There they are, the others, ladies and gentlemen.* ... Just like you have got to get out of the eighth grade before you can go into high school. Jay Githens can't recover from the Highway Department and the City of Poplar Bluff until after you made an award to Mr. and Mrs. Mock. ... How do we protect my property, how do we protect your property, how do we protect Jay Githens' property, how do we protect Mr. Cochrane's property? We don't ever let a situation like this occur again. Now, how do you keep it from occurring again? His Honor tells you that the way you can keep it from occurring again is *if you believe this you can punish them and deter them from like conduct by* awarding punitive damages. ... Then it says, 'For punitive damages,' and you are permitted to fill in an amount there if you believe that the pile driving was a conscious disregard for the property of others. Now, what amount do you fill in there? What amount will it take? How much do you have to have there *to get somebody's attention* so that nobody else will have to ever suffer this kind of

treatment that Warren and Judy Mock went through. ... And I suggest to you that when you fill in an amount there to stop others and this defendant from doing it again, that it should *be an amount that will get somebody in Jefferson City attention.* So that we won't ever have to be here on a snowy, bad day asking that the only chance in the world Warren Mock has to be made whole is in the hands of the jurors. (Emphasis ours.)

Plaintiffs allege (1) that counsel for defendant did not properly preserve at trial any alleged error in the argument for appeal, (2) the existence of the lawsuit was relevant and could properly be considered by the jury, and (3) the argument was not prejudicial.

■ We have long held in this state that the fact a litigant may recover his loss from another party, usually his insurance company, is not material or relevant to any issue in the case, and it is prejudicial error to admit such evidence if the admission does not come within an exception to the rule. *E.g., Page v. Unterreiner,* 106 S.W.2d 528, 537–38 (Mo.App.1937); *Murphy v. Graves,* 294 S.W.2d 29, 32[3] (Mo. 1956). "Admission of such evidence is highly prejudicial to the defendant, who has a right to his own personal identity in the courtroom, and its admission injects into the case a poison that a mere withdrawal of the question does not cure[,] ... as it is a well known fact that such evidence tends to poison the minds of the jury, and the mere antidote of withdrawing the poison from the consideration of the jury is ineffective." *Page,* 106 S.W.2d at 538; *see also Buehler v. Festus Mercantile Co.,* 343 Mo. 139, 154–55, 119 S.W.2d 961, 968 (banc 1938). While in theory it should make no difference whom the judgment is to be paid by as the plaintiffs' damages are to be measured by fixed conditions, everybody knows juries are prone to return larger verdicts where they are informed that any verdict returned against defendant will not harm him but will be paid by another perceived to have the ability to pay. *See*

*Buehler*, 343 Mo. at 155, 119 S.W.2d at 968; *Murphy*, 294 S.W.2d at 32.

■ Here, it is painfully clear that plaintiffs' counsel was attempting to convince the jury that Mr. Githens' construction company would be able to recover any award against it from the "deep pocket" of the state. His argument was clearly not directed towards an attempt at showing bias and its effect on Mr. Githens' testimony. Rather it continuously pointed to the state as a source from which Mr. Githens could recover whatever he might lose after graduation from "grade school." In addition, plaintiffs' counsel went on to argue the state should be sent a "message" by awarding a large verdict against Mr. Githens. The error in such argument is clear in light of the previously discussed prejudice created by such arguments.

The defendant's objection quoted *supra* sufficiently directed the trial court's attention to the error of plaintiffs' counsel's argument. While true that generally a failure to object to an argument at the time counsel is addressing the jury results in a waiver of any rights to complain about the argument on appeal, *Hensic v. Afshari Enterprises*, 599 S.W.2d 522, 526[7] (Mo.App. 1980), where as here the argument to which the objection was unquestionably directed was obviously highly improper, and the ground or reason for the objection self-evident, the objection will be found to be sufficient to call for action by the court, though it might be called general. *Kelley v. Hudson*, 407 S.W.2d 553, 558 (Mo.App. 1966); *Dodd v. Missouri-Kansas-Texas R.R.*, 353 Mo. 799, 806–07, 184 S.W.2d 454, 458 (1945). The reasoning behind this rule appears to be that "where the argument can have no conceivably proper purpose, and is obviously false and manifestly prejudicial upon every consideration and for every reason, it would be labor lost to require a technically precise objection to it; indeed, to insist upon it in those circumstances, ... would surely provoke the Scriptural rebuke of straining at a gnat and swallowing a camel." *Kelley*, 407 S.W.2d at 558. For these reasons defendant's objection was more than sufficient in this case to preserve its point for our review.

In addition, where as here, the court nisi not only made no attempt to remove the prejudicial remarks, but instead encouraged plaintiffs' counsel by its approval of the offending argument, it was unnecessary for defendant's counsel to repeat its objection when plaintiffs' counsel continued to elaborate upon the same theme. *Id.* As we have found defendant did make a proper and timely objection to at least one phase of plaintiffs' argument that was improper and prejudicial, it is not necessary to determine if this argument would justify this court in evoking Supreme Court Rule of Civil Procedure 84.13(c).

■ Plaintiffs contend that as the evidence of the third-party claim was properly in evidence, it was not error to permit plaintiffs' counsel to refer to that evidence in argument. Such might have been the case had plaintiffs' counsel used the evidence for the purpose of arguing that which he had allegedly admitted it for. Plaintiffs' counsel went beyond the bounds of necessary and reasonable argument in discussing the third party suit by making such statements as "you spank *them* [referring to the State Highway and Transportation Commission] hard and maybe they won't treat anybody else again like *they* have treated Mr. and Mrs. Mock." (Emphasis ours.) Cases cited *supra* concerning the prejudicial nature of such argument.

Plaintiffs also argue that defendant injected the matter into the case in his opening statement by stating that:

[Mr. Cochrane:] ... The evidence will be that Jay Githens had nothing to do with this damage. Jay had nothing to do with designing the project. He had nothing to do with locating the project in relation to Mr. Mock's property. Jay had nothing to do in determining whether Mr. Mock's property or somebody elses [sic] property would have been bought or condemned. Jay had nothing to do with determining whether the project would set one hundred feet or twenty feet from Mr. Mock's

property. Jay Githens had nothing to do with even determining where the piles were driven, at what angle. This was all set out in the plans and specifications. The inspector of the State of Missouri Highway Commission would even measure the angle and before it was driven to make sure it was driven out the way it was in the plans and specifications. And Jay, of course, complied with the standard specifications in all respects.

and by further stating:

The evidence will be, ladies and gentlemen, that they have simply brought the lawsuit against the wrong party. Jay Githens is not responsible for plaintiffs [sic] damages.

Contrasting the arguments of opposing counsels it is manifest that the argument of plaintiffs' counsel complained of here was not in retaliation or response to anything stated by defendant's counsel in its opening statement. Plaintiffs' counsel's argument was not an attempt to show that indeed the right party had been sued. Rather, it attempted to show that Mr. Githens' company would recover from the state and the City of Poplar Bluff any award against it and thus a judgment against defendant should be used as a tool to punish and teach *not* defendant but the state and Poplar Bluff that "you don't treat people like Warren Mock and Judy Mock, who are good God fearing people who tried to make a living, like dirt." Under the circumstances such an appeal to the jury was inexcusable.

The record points to but one conclusion, which is that plaintiffs' counsel was seeking to impress upon the minds of the jury the fact that defendant would not have to pay any judgment awarded against it. In *Moss v. Mindlin's, Inc.*, 301 S.W.2d 761, 765 (Mo.1957) our supreme court specifically noted that the argument injecting insurance into the case had not been made on the damage issue or in connection with the size of the verdict, and that it had not implied that another would pay any verdict returned, in finding that there had been no reversible error in that cause. Here, these are precisely the issues to which plaintiffs' counsel alluded to in his argument.

Where it is clear that the adroit purpose and result of the argument is to instill in the jurors' minds the idea defendant is not really interested in the outcome of the case because no matter the result someone else will bear the loss, the conduct will meet with the punishment of a reversal. "[C]ounsel should not try to see how near they can come to the danger line without getting over it, since sooner or later they will inadvertently get over." *Murphy*, 294 S.W.2d at 32 (quoting *Hill v. Jackson*, 272 S.W. 105, 107 (Mo.App.1925)).

As frequently stated by courts of this state, "Trials before juries ought be conducted with dignity and in such manner as to bring about a verdict based solely on the law and the facts." See *Critcher v. Rudy Fick, Inc.*, 315 S.W.2d 421, 427 (Mo.1958) and the cases cited therein. Due administration of justice demands that extrinsic matters should not be allowed to be injected into a case, either by evidence, remarks of counsel, or even by conduct of the judge which tend to create bias or prejudice. Even if the court had ruled to sustain defendant's objection the evil effect of injecting such matters into the case may not have been cured. "The red hot iron of prejudice has been thrust into the case; merely withdrawing it still leaves a festering wound." *O'Hara v. Lamb Const. Co.*, 197 S.W. 163, 165 (Mo.App.1917). In such instances, the only effectual remedy is setting aside the judgment.

Because of the improper and prejudicial argument the judgment is reversed and the cause remanded for a new trial solely on the issue of plaintiffs' actual damages, as plaintiffs assert no error in the award of zero punitive damages and defendant asserts no error in the directed verdict as to its liability for plaintiffs' actual damages.

GREENE, J., concurs.

PREWITT, C.J., concurs in result only.

FLANIGAN, J., did not sit.