**ROZARK FARMS, INC., a Corporation,
Appellant/Cross–Appellee,**

v.

**OZARK BORDER ELECTRIC COOPER-
ATIVE, Appellee/Cross–Appellant.**

Nos. 87–1791, 87–1830.

United States Court of Appeals,
Eighth Circuit.

Submitted March 15, 1988.

Decided June 10, 1988.

Rehearing Denied July 18, 1988.

James E. Spain, Poplar Bluff, Mo., for appellant/cross-appellee.

Melvin E. Carnahan, Rolla, Mo., for appellee/cross-appellant.

Before McMILLIAN, WOLLMAN and BEAM, Circuit Judges.

BEAM, Circuit Judge.

Both parties in this action appeal from a jury verdict in favor of the plaintiff, Rozark Farms, Inc. (Rozark Farms), awarding $375,000.00 in damages arising out of a fire which occurred at Rozark Farms' charcoal manufacturing plant. We reverse and remand for a new trial on the issue of damages.

BACKGROUND

On the morning of July 3, 1982, a fire destroyed a significant portion of Rozark Farms' charcoal manufacturing plant located in rural Carter County, Missouri. The original cause of the fire remains unknown. Rozark Farms, however, brought suit against the defendant, Ozark Border Electric Cooperative (Ozark Border),[1] claiming that Ozark Border negligently failed to respond within a reasonable time to Rozark Farms' request to shut off the power to the manufacturing plant, and that such delay contributed to the damages incurred as a result of the fire. Rozark Farms alleged that live, downed power lines prevented its employees and local fire department personnel from effectively fighting the fire. Rozark Farms asserted that had Ozark Border responded to the emergency within a reasonable time, the fire could have been extinguished before it caused substantial damage to the facility.

The jury found, according to its charge, that Ozark Border had been negligent, and that its negligence directly contributed to cause damage to the plaintiff. Plaintiff had asked for damages exceeding $5,000,-

---

1. The original plaintiff in this lawsuit was T.S. Ragsdale, Inc., who brought suit against Rozark Farms seeking damages for the loss of a quantity of its charcoal which was stored in Rozark Farms' plant and lost in the fire. Rozark Farms then brought this action against Ozark Border as third-party defendant. All claims except the third-party claim were settled prior to trial, and the parties were realigned as plaintiff and defendant for purposes of clarity at trial. The court shall refer to the parties by name or as plaintiff and defendant in this opinion.

000.00, representing property damage to the manufacturing facility and lost profits. The lost profits claim was premised upon a contract, entered into prior to the fire, between the plaintiff and T.S. Ragsdale, Inc., in which Ragsdale agreed to purchase plaintiff's entire annual output for a period of five years at a price which allegedly guaranteed plaintiff an annual profit of approximately $900,000.00. As noted, the jury reached a verdict in plaintiff's favor, but awarded damages of only $375,000.00.

Both parties appeal. Rozark Farms claims that defendant's counsel improperly asked one of its witnesses about the existence of casualty insurance covering damages incurred as a result of the fire. Rozark Farms asserts that the wrongful injection of the existence of insurance coverage prejudiced the jury and resulted in an inadequate award of damages. Rozark Farms also claims that the district court erred in finding its damages divisible, and in requiring it to prove that portion of its damages for which Ozark Border's negligence was directly responsible. Ozark Border, on the other hand, asserts that the matter of plaintiff's insurance was relevant and was properly discussed by counsel at trial. Ozark Border also cross-appeals, claiming that the district court improperly instructed the jury regarding the extent of plaintiff's damages recoverable from Ozark Border.

DISCUSSION

1. Insurance

During defendant's cross-examination of Robert Carnahan, an officer and director of Rozark Farms, counsel for Ozark Border asked the following questions:

Q: Now, did you sustain some property damage as a result of this fire?

A: Yes.

Q: And was this property damage insured by you?

At this point, counsel for Rozark Farms objected. A lengthy bench conference ensued, during which counsel for Rozark Farms requested a mistrial. After learning that counsel for Ozark Border did not intend to pursue the line of questioning further, the court denied the motion for a mistrial and did not rule one way or the other on the objection to the specific question. The court then adjourned for the day. The next morning, counsel for Rozark Farms filed a motion in limine, seeking to prevent any further mention of plaintiff's insurance, which motion the court overruled upon continued assurances by counsel for Ozark Border that he would not inquire further with regard to plaintiff's insurance. The cross-examination of Mr. Carnahan then resumed on another subject. The case thus proceeded with no formal ruling by the court on the objection to the insurance question, and no instruction or comment to the jury to disregard the specific question or the subject of insurance coverage generally. The matter of plaintiff's insurance was left hanging in the jurors minds, argues Rozark Farms, with no guidance by the court regarding how it should be considered by them.

■ It is well settled, under Missouri law, that "the fact a litigant may recover his loss from another party, usually his insurance company, is not material or relevant to any issue in the case, and it is prejudicial error to admit such evidence * * *." Mock v. J.W. Githens Co., 719 S.W.2d 79, 83 (Mo.App.1986). See Hulsey v. Schulze, 713 S.W.2d 873, 875 (Mo.App. 1986) ("The improper injection of insurance coverage into the case constitutes reversible error especially if done so purposefully or in bad faith."). See generally Transit Cas. Co. v. Transamerica Ins. Co., 387 F.2d 1011, 1013–14 (8th Cir.1967) (applying Missouri law); Means v. Sears, Roebuck & Co., 550 S.W.2d 780, 787 (Mo. banc 1977); Kickham v. Carter, 335 S.W.2d 83, 90 (Mo. 1960); Saveway Oil Co. v. Sears, Roebuck & Co., 560 S.W.2d 325, 332 (Mo.App.1977). While not every reference to insurance constitutes reversible error, if the subject is mentioned without a legitimate purpose, a reference to insurance which operates to prejudice the jury fatally infects the trial. See Mock, 719 S.W.2d at 83; Transit, 387 F.2d at 1014.

■ In this case, the court can see no excuse for the question asked of Mr. Carnahan. At trial, and again on appeal, counsel for Ozark Border claims that his ques-

tion was a foundational predicate to further questioning regarding amounts claimed by Rozark Farms on proof of loss forms submitted to Rozark's insurance company. If this were indeed the case, Ozark Border's argument might have some validity. An amount set forth on a proof of loss form can be relevant to impeach a later assertion by the insured that a greater amount of loss was actually suffered.[2] *See, e.g., Lund v. Holbrook*, 153 Neb. 706, 720, 46 N.W.2d 130, 138–39 (1951). In this case, however, there is no indication that Ozark Border's attorney had Rozark Farms' proof of loss form in his possession when he asked the question at trial, that he knew what amounts were actually claimed on the proof of loss submitted by Rozark Farms, or that he intended to proceed with any further questioning of Mr. Carnahan on the issue of insurance. In fact, the trial judge asked Ozark Border's attorney whether he had a copy of the proof of loss, to which counsel replied, "He says I do, your Honor. I can't find it."

■ We believe that defendant's proof of loss theory amounts to little more than an effort, after the fact, to justify a largely successful attempt to bring the fact of plaintiff's insurance coverage to the minds of the jurors. We conclude that Ozark Border's injection of the subject of plaintiff's insurance coverage was wrongful and without justification. Given the relatively small damage award returned by the jury, and the fact that the evidence would have supported a significantly larger verdict, we further conclude that the injection of the subject of insurance in this case was prejudicial, and justifies a new trial on the issue of damages.

### 2. Concurrent Liability

Both parties object to the trial court's instructions and rulings during trial regarding the extent of Ozark Border's liability for damages in this case. Throughout trial, Rozark Farms maintained that its damages were the result of two indepen-

dant and legally sufficient causal factors. It argued that the original fire, the cause of which is not known, and the negligence of Ozark Border were both substantial factors in bringing about the harm suffered as a result of the fire, and that each is a legal cause of Rozark Farms' damages. Further, Rozark Farms asserted that the damages suffered as a result of the fire are incapable of apportionment between these two causes, and that Ozark Border is liable for all damages incurred by Rozark Farms.

Ozark Border, on the other hand, argues that its liability in this case, if any, is limited to those damages which directly resulted from its negligence. In other words, Ozark Border claims that it is liable only for those damages incurred after the time at which it should have shut off the power to the manufacturing facility if acting reasonably, and then only if such damages would not have been incurred in any event as a result of the original fire.

The district court's analysis of this issue is somewhat unclear. Prior to trial, Rozark Farms filed a motion in limine, seeking a ruling that its damages were indivisible and that Ozark Border's liability would extend to the entirety of the losses caused by the fire. The court denied the motion. During trial, just prior to plaintiff's presentation of its evidence regarding damages, Rozark Farms asked the court once again to find that its damages were indivisible and incapable of apportionment. The court refused. Rozark Farms asserts that these rulings were in error, and that it was improperly required to attempt to identify that portion of its damages which was incurred specifically as a result of the negligence of Ozark Border.

Despite these rulings, the district court instructed the jury as follows:

> Your verdict must be for the plaintiff if you believe:

**2.** Even when proof of this type is relevant, it is better practice to receive the evidence, if reasonably possible, without unduly interjecting the fact that the claimant has insurance coverage applicable to the loss at issue. Sometimes, however, this cannot be done without misleading the jury, which situation should generally be avoided.

First, defendant failed to shut off the electric power at plaintiff's charcoal plant within a reasonable time after defendant had knowledge of the fire, and

Second, defendant was thereby negligent, and

Third, such negligence directly contributed to cause damage to plaintiff.

\* \* \* \* \* \*

If you find in favor of plaintiff then you must award plaintiff such a sum as you believe will fairly and justly compensate plaintiff for any damages you believe it sustained as a direct result of the occurrence mentioned in the evidence.

Ozark Border argues that these instructions permitted the jury to return a verdict awarding plaintiff damages for all losses incurred as a result of the fire, not just those directly resulting from its negligence. It claims that the instructions given by the court embody a conclusion that plaintiff's damages are indivisible, contrary to its rulings which were made earlier in the trial. Ozark Border asserts that these instruction are in error, and that the verdict should be set aside.

The traditional rules of concurrent cause and liability expressed in the Restatement (Second) of Torts have been adopted in Missouri. *Richardson v. Volkswagenwerk, A.G.*, 552 F.Supp. 73, 81 (W.D.Mo. 1982) (Missouri courts have "reaffirmed traditional concurrent tortfeasor liability rules deeply engrained in Missouri law and embodied in Restatement (Second) of Torts §§ 433, 433A and 433B (1965)"). These rules provide that where more than one cause combines to produce a single injury, and that injury is incapable of reasonable apportionment among the several causes, the injured party may recover the entirety of his damages from any one of the negligent actors. *See id.* at 81–82; *Barlow v. Thornhill*, 537 S.W.2d 412, 415–16 (Mo. banc 1976); *Glick v. Ballentine Produce, Inc.*, 396 S.W.2d 609, 612–13 (Mo.1965).

In Missouri, negligent conduct is the legal cause of harm to another if the conduct is a substantial factor in bringing about the harm. *Richardson*, 552 F.Supp. at 82; Restatement (Second) of Torts § 431. The plaintiff need not establish that the defendant's conduct was the sole cause of the plaintiff's injuries, only that the negligent conduct was a substantial factor in bringing about the resultant injury. *Id.* Whether the damages suffered as a result of multiple causes are capable of apportionment among the several causes is, at least initially, a question of law for the court. *Richardson*, 552 F.Supp. at 83; *Mitchell v. Volkswagenwerk, A.G.*, 669 F.2d 1199, 1208–09 (8th Cir.1982). The Restatement sets forth the test for determining whether damages are capable of apportionment:

(1) Damages are to apportioned among two or more causes where

(a) there are distinct harms, or

(b) there is a reasonable basis for determining the contribution of each cause to a single harm.

(2) Damages for any other harm cannot be apportioned among two or more causes.

Restatement (Second) of Torts § 433A. These rules apply where one or more of the contributing causes is an innocent one, such as an act of nature, and also where the defendant's negligence combines with a pre-existing condition not of the defendant's making. *Id.* at comment a. In applying these rules, if the court finds that the damages incurred as the result of more than one legal cause are indivisible as a matter of law, and are therefore incapable of apportionment, each negligent actor is jointly and severally liable for the total of plaintiff's damages. *Richardson*, 552 F.Supp. at 83–84.

■ In this case, the jury found, as instructed, that Ozark Border was negligent, and that its negligence directly contributed to the plaintiff's damages. We believe the record supports this conclusion. There was testimony from which the jury could have reasonably concluded that Ozark Border's delay in responding to the emergency call was unreasonable and that had Ozark Border responded within a reasonable period, the fire could have been extinguished at a significantly earlier time. The jury's determination that Ozark Border's negligence was a legal cause of plaintiff's damages is

supported by the record and shall not be disturbed.

■ Of greater concern to the parties is the district court's conclusion regarding whether plaintiff's damages from the fire are capable of apportionment. As noted, it appears that the district court, while espousing the view during trial that plaintiff's damages were divisible, instructed the jury to award all damages sustained as a direct result of the "occurrence," a term which seems to encompass all damages from the fire. Because a new trial on the issue of damages will be held in any event, we need not attempt to interpret the meaning of this instruction. On remand, the court shall instruct the jury in accordance with our conclusion, here stated, that the damages suffered by Rozark Farms are incapable of apportionment as a matter of law. Loss as a result of fire has traditionally been classified as a type of damage not reasonably capable of apportionment between more than one cause. *See* Restatement (Second) of Torts § 433A, comment i. We believe it unreasonable to expect either party under the facts of this case to attempt to identify and value those portions of plaintiff's manufacturing plant damaged as a result of the original fire, and those portions damaged as a result of the delay in shutting off the power. To make such estimates would, in cases such as this, invariably lead to improper speculation and conjecture by the jury.

■ Moreover, the burden of proof on the issue of apportionment is on the party seeking to limit its liability, here Ozark Border. Restatement (Second) of Torts § 433B(2). The only evidence offered at trial on this issue was offered by the plaintiff, who at the time was under the impression that it was required to prove which of its damages were specifically attributable to defendant's negligence in order to establish a submissible case. Ozark Border offered no evidence in its case-in-chief on the issue of apportionment. Under the circumstances, even assuming plaintiff's damages are capable of apportionment, the defendant failed to satisfy its burden under section 433B(2) of the Restatement.

As indicated, this case is one in which plaintiff's damages arise out of an indivisible loss which the defendant's negligence was a substantial factor in causing. Despite the fact that an innocent cause may have also been a substantial factor in bringing about the harm, Ozark Border is jointly and severally liable to Rozark Farms for all damages incurred as a result of the July 3 fire. We remand this case to the district court for determination of the amount of such damages, unaffected by the inappropriate injection of plaintiff's insurance coverage.

CONCLUSION

The case is remanded to the district court for a new trial exclusively on the issue of damages.