Virginia J. BRENNAN,
Plaintiff/Respondent/Cross–Appellant,

and

Andrew P. Brennan, Plaintiff/Cross–
Appellant,

v.

ST. LOUIS ZOOLOGICAL PARK,
Defendant/Cross–Respondent,

and

Mackey and Associates, P.C.,
Defendant/Appellant.

Nos. 64435, 64480.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 30, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 4, 1994.

Application to Transfer Denied
Sept. 20, 1994.

Kenneth Aubrey Slavens, Timothy W. Luft, St. Louis, for appellant.

James C. Brandenburg, Mark Joseph Cero, St. Louis, for respondent.

CRAHAN, Judge.

These are consolidated appeals arising out of Virginia Brennan's ("Plaintiff") action [1] against defendant Mackey & Associates ("Mackey") for professional negligence and against defendant St. Louis Zoological Park ("Zoo") for negligence, in which Plaintiff sought damages for personal injuries she sustained in a fall at the Zoo. On appeal, Plaintiff asserts that the trial court erred in the exclusion of certain evidence at trial. Mackey appeals the judgment in favor of Plaintiff, contending that she failed to make a submissible case of professional negligence against Mackey. We affirm in part and reverse in part.

On August 7, 1989, Plaintiff visited the Zoo and fell while either turning or stepping up some steps near the Zoo's main south entrance. Plaintiff caught her left foot in a small recess at the bottom of the steps. She stated that she saw the steps, but when her foot got stuck and wedged underneath the lip on the bottom stair, she fell across the steps. As a result of the fall, Plaintiff sustained injuries to her right hand and left foot.

In its verdict, the jury assessed fault of 75% to Plaintiff, 25% to Mackey and 0% to the Zoo. The total damages were assessed at $50,000. The trial court entered judgment in favor of Plaintiff and against Mackey in the amount of $12,500.

### Plaintiff's Appeal

█ Plaintiff asserts that the trial court erred in excluding the testimony and incident report of Sergeant Bruce Stager because they were admissions against the Zoo's interests which should have been admitted. Sergeant Stager, who worked for the Zoo for eighteen years on the ranger force and was on the Zoo safety committee for five of those years, filled out an incident report concerning Plaintiff's fall. That report contained his opinion that "there should be yellow stripes painted on the edge of the steps so that they are more visible." The trial court excluded this evidence based on an objection that the information was of the nature of a subsequent remedial repair and was not an admission against interest.

█ The trial court is vested with broad discretion in its rulings on the admissibility of evidence and therefore we review only for abuse of discretion. *Bellistri v. City of St. Louis,* 671 S.W.2d 405, 406 (Mo.App.1984). Evidence of repairs to allegedly defective property after the property causes an injury for which damages are sought is generally inadmissible in negligence actions. *Pollard v. Ashby,* 793 S.W.2d 394, 401–02 (Mo.App. 1990). Evidence of such repairs is inadmissible because courts do not want to cause a disincentive for defendants to improve the property that caused injury, and because any subsequent changes are irrelevant as to a finding of any supposed defect in its previous condition. *Id.*

Here, the evidence about which Plaintiff complains relates to a statement made after Plaintiff's fall and contains a suggestion of what action might be taken in the future to improve the property. Thus, the trial court did not abuse its discretion by excluding the evidence because the possible prejudicial effect of admitting the recommendation for repair outweighed the possible benefit of admitting the evidence. Further, Plaintiff admitted she saw the steps so it is difficult to discern how the absence of yellow stripes could have contributed to the accident. Accordingly, we affirm the judgment of the trial court with respect to the exclusion of Sergeant Stager's testimony and incident report.

1. Andrew Brennan's companion action resulted in a verdict in favor of defendants. He joins in Plaintiff's appeal, but for ease of reference we will refer to Plaintiff in the singular.

### Mackey's Appeal

■ Mackey contends that Plaintiff failed to make a submissible case of professional negligence. In a professional malpractice case, the plaintiff must present the testimony of a qualified professional as to the degree of care and skill that is generally accepted by those engaged in the profession. *See Yoos v. Jewish Hospital of St. Louis,* 645 S.W.2d 177, 183 (Mo.App.1982). Absent such testimony, the plaintiff cannot make a submissible case and is not entitled to recovery. *Bridgeforth v. Proffitt,* 490 S.W.2d 416, 422–23 (Mo.App.1973).

■ Mackey is a professional corporation of architects. Mackey argues that Plaintiff's purported expert, Mr. Koestering, was incompetent to give an expert opinion as to the standard of care for architects because he was not a licensed architect nor had he ever practiced in the field of architecture. We agree.

Mr. Koestering is a registered *professional engineer* licensed by the State of Missouri. Over Mackey's objections, Mr. Koestering was permitted to testify that Mackey did not use the same standard of care ordinarily used *by architects* in designing the stairs. Mr. Koestering conceded, however, that his profession, engineering, and Mackey's profession, architecture, are two different professions. Thus, Mr. Koestering's training and education as an engineer did not qualify him to testify as to the standard of care for architects.

Plaintiff argues that Mr. Koestering's experience working closely with and overseeing architects for over thirty five years qualified him to testify as to architects' standard of care. Plaintiff cites *Cebula v. Benoit,* 652 S.W.2d 304, 308 (Mo.App.1983) for the proposition that an expert need not always be a licensed member of defendant's profession to testify as to defendant's malpractice. In *Cebula,* the court acknowledged that there might be "unusual circumstances" that would allow a non-physician to testify as to medical malpractice, noting that medical personnel at all levels may be qualified to testify to matters within the range of their specialties if they are uniquely qualified. *Id.* The court cautioned, however, that the plaintiff's burden of proving that a witness is competent to know the standard of care for a profession of which the witness is not a member "is not a light one." *Id.* at 309.

The situation in this case is distinguishable from the one contemplated by the court in *Cebula.* In *Cebula,* the court suggested that members of the general medical profession may be uniquely qualified to testify about the standard of care of a specialty within the medical profession. *Id.* at 308–09. In contrast, Plaintiff in this case asks us to extend this reasoning to allow a member of one profession to testify about an entirely different profession based on one's special experience. The fact that Mr. Koestering worked closely with architects for a number of years does not mean he is qualified to testify as to the standard of care required of architects by their own profession. Thus, we find that Mr. Koestering's testimony is insufficient to make a submissible case of professional negligence against Mackey.

■ Plaintiff further argues that architects Mackey and Guenther admitted that, as professional architects, they were obliged to design reasonably safe structures. Plaintiff contends that such admissions, coupled with Mr. Koestering's testimony that the steps were not safe, satisfied her burden of proving professional negligence. We disagree. Neither architect testified that the steps as constructed failed to meet generally accepted architectural standards. Mr. Koestering so testified but, as discussed above, he was not qualified to do so.[2]

Accordingly, we reverse the judgment of the trial court with respect to the verdict in favor of Plaintiff and against defendant

2. As defendant points out, any doctor would likely testify that he is professionally obliged to treat patients safely. Such testimony would not be sufficient to allow a layman to express an opinion that the procedure was unsafe and thereby satisfy the burden of proof. What is missing is testimony *by a member of the profession* that the procedure did not measure up to standards recognized and employed by the profession generally.

Mackey. In all other respects, the judgment is affirmed.

CRANE, P.J., and KAROHL, J., concur.