

# Missouri Court of Appeals

### Southern District

### Division Two

| | | |
|---|---|---|
| STEVEN ANDREW SCHAEFFER, | ) | |
| | ) | |
| Petitioner-Respondent, | ) | |
| | ) | |
| v. | ) | No. SD33377 |
| | ) | |
| JASMINE RENEE SCHAEFFER, | ) | **Filed: Aug. 10, 2015** |
| | ) | |
| Respondent-Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Mark Fitzsimmons, Associate Circuit Judge

**AFFIRMED**

Jasmine Renee Schaeffer ("Wife") appeals from the judgment dissolving her marriage to Steven Andrew Schaeffer ("Husband"). Because Wife's only preserved error claim was waived by her failure to timely assert it to the trial court, we affirm.

**Background**

When Husband and Wife separated in February 2012, Wife was pregnant with the parties' only child ("Child"). Sometime during the course of her pregnancy, Wife relocated from Springfield, Missouri to Florida.

On July 12, 2012, Husband filed a petition to dissolve the marriage in the Circuit Court of Greene County, Missouri that alleged Wife's pregnancy and sought a custody determination. The following month, Husband filed a motion seeking an immediate contact

1

schedule that would authorize Husband to be present at Child's birth. That same day, Wife filed an answer to Husband's Greene County petition that admitted she was pregnant and included a counter-petition for dissolution. At a hearing held the following day, the parties appeared by counsel, and there is no suggestion in the resulting docket entry that Wife's counsel objected to the trial court's authority to proceed. The trial court granted Husband's motion in part, but it also awarded Wife "residential custody" of Child. Child was born a few days later in Florida.

Thereafter, Wife's original attorney withdrew, and Husband moved for temporary custody or visitation. Wife did not appear at the hearing on this motion, and the trial court entered a temporary visitation order to be in effect until a court hearing on November 15, 2012. The trial court sent copies of the order to counsel and "any unrepresented party[.]" After new counsel entered an appearance for Wife, Husband filed a motion for contempt on October 29, 2012, alleging that Wife failed to comply with the temporary visitation order. The trial court issued a show cause order on October 30, 2012 regarding the contempt motion, and it set the matter for hearing on November 15, 2012.

In early November 2012, Wife moved to Galveston, Texas. On November 8, 2012, she filed a motion to dismiss the Missouri case on the ground that Florida was the home state of Child under the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). *See* section 452.700 et. seq.[1]

Wife appeared personally with counsel at the hearing on Husband's contempt motion on November 15, 2012. The docket does not reflect a ruling on the contempt motion, but the trial court denied Wife's motion to dismiss. The trial court also granted Wife's motion

---

[1] All statutory references are to RSMo Cum. Supp. 2013 and all rule references are to Missouri Court Rules (2015).

for the appointment of a guardian ad litem, and it announced a temporary parenting schedule.

After this hearing, Wife filed suit in Texas ("the Texas petition"), seeking, among other things, an order that Wife be appointed the sole "conservator" of Child. Among other allegations in the Texas petition, Wife averred that "[C]hild is three months of age and is not subject to the jurisdiction requirements of any Court at this time." The petition disclosed the existence of the Missouri case and stated that "it appears the [trial c]ourt has recognized the birth of [Child] and may have entered a temporary provision for [Husband] to see [Child]." The Texas petition asked the court "to contact the presiding judge of the Circuit Court of Greene County, Missouri, and request the release of any potential jurisdiction that [the trial c]ourt may have regarding [Child]."

Husband responded with a Texas *habeas corpus* action to require Wife to produce Child in the Texas court. After a hearing on that action in Texas, Wife (who did not have Child with her) was ordered by the Texas court to relinquish custody of Child to Husband. Thereafter, the Texas court issued an order finding that because "Missouri has retained jurisdiction of the suit affecting the parent-child relationship, the State of Texas lacks jurisdiction to make an initial child custody determination pursuant to [Texas law]."

After these events, Wife moved back to Springfield, Missouri. A trial on the parties' competing petitions for dissolution was held before the trial court on March 3, 2014. The resulting judgment dissolved the marriage, divided the parties' property and debts, granted Husband sole legal custody of Child, and awarded the parties joint physical custody of Child. This appeal timely followed.

3

**Wife's Points on Appeal**

Wife raises five points, which we quote:

I.    The trial court erred in entering a judgment regarding the child custody when it lacked statutory authority to assert jurisdiction because Missouri is not the home state of [Child].

II.   The trial court erred when it awarded joint physical custody of [Child] to the parties, but failed to provide [Wife] with [a] significant and meaningful period of time with [Child].

III.  The trial court erred when it awarded sole legal custody to [Husband] when he has made unilateral decisions bearing on legal custody without [Wife]'s input.

IV.   The trial court erred when it carried out the division of property in an unreasonable and unfair ma[nn]er.

V.    The trial court erred when it awarded unreasonable and unjust child support and attorney's fees against [Wife].

**Rules Governing Appellate Briefs**

Rule 84.04(d)(1) requires a point relied on to "(A) identify the trial court ruling or action that the appellant challenges; (B) state concisely the legal reasons for the appellant's claim of reversible error; and (C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error."  The appellate process requires that points on appeal be properly stated to:  (1) give the respondent notice of "the precise matters which must be contended with and answered"; (2) give notice to the court to allow "for clarification by meaningful questions to the issues" raised and to prevent a waste of judicial resources which may occur "[i]f the appellate court is left to search the argument portion of the brief (or even worse, to search the record on appeal)"; and (3) avoid misinterpretation of the appellant's argument.  *Thummel v. King*, 570 S.W.2d 679, 686 (Mo. banc 1978).

4

"A point that claims error but then fails to allege why the ruling was erroneous or fails to refer to testimony or other evidence that supports the appellant's contention preserves nothing for appellate review[.]" ***In re Marriage of House***, 292 S.W.3d 478, 482 (Mo. App. S.D. 2009). "Failure to include in the statement of facts the facts upon which an appellant's claim of error is based fails to preserve the contention for appellate review." ***Angle v. Grant***, 997 S.W.2d 133, 133 (Mo. App. S.D. 1999); *see also* Rule 84.04(c).

### Analysis

We begin our analysis with points II–V, all of which are fatally defective. Each point, although arguably identifying the challenged court ruling or action, fails to comply with the remaining provisions of Rule 84.04(d)(1). The legal reasons provided in support of Wife's claims of error are abstract, and no explanation is provided as to why, in the context of this particular case, those legal reasons support a claim of reversible error. *See **In re Marriage of Weinshenker***, 177 S.W.3d 859, 863 (Mo. App. E.D. 2005). Compounding the problem, Wife's statement of facts violates Rule 84.04(c) by not including facts that are relevant to the issues presented in her points,[2] and the arguments that follow her points fail to cure the deficiency. The few relevant facts provided are either: (1) not later referenced in connection with any relevant argument and legal authority; (2) unsupported by any citations to the record; or (3) consist entirely of Wife's own self-serving testimony (which the trial court was not required to believe) and are devoid of any references to evidence favorable to the judgment.

To illustrate the inscrutable nature of Wife's error claims, the following barriers thwart any attempt to analyze her second point on any merit it might have. In the argument

---

[2] Wife's statement of facts, which spans approximately three-and-a-half pages, is mostly a lengthy recitation of the procedural posture of this case; it does, however, contain a few facts pertinent to Wife's first point.

5

section supporting Point II, Wife states that she was awarded the following parenting time: Tuesday and Thursday from 5:30 p.m. to 8:00 p.m. and alternate weekends from Friday at 6:00 p.m. until Sunday at 6:00 p.m. Wife argues that this parenting schedule "does not provide a realistic opportunity for visitation." In support, Wife makes two allegations. First, she cites a single excerpt from her testimony that she works 9:00 a.m. to 5:00 p.m. and that her work hours "vary," but she does not demonstrate the legal relevance of this information. Wife then asserts that her parenting time will be diminished because of the amount of time necessary to transport Child to and from daycare and Husband's residence, but she provides no "specific page references to the relevant portion of the record" as required by Rule 84.04(e) supporting the amount of time it will actually take to transport Child for that parenting time.

Wife makes no further attempt to explain the relevance of these facts under any applicable standard of review or governing legal authority, let alone explain how they might support a claim of reversible error. In any event, Wife's reliance solely on her own evidence, whatever its desired significance might be, is analytically useless. Our standard of review requires this court to disregard all evidence and inferences that are contrary to the judgment, *Redlinger v. Redlinger*, 111 S.W.3d 413, 415 (Mo. App. E.D. 2003), and we must defer all credibility determinations to the trial court. *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991). Points III–V are riddled with similar deficiencies, the details of which we will not recount.

Thus, to evaluate Wife's points would require us to seine the record for evidence that might support the trial court's rulings about which Wife now complains. We would then need to recast Wife's contentions in accordance with the applicable standard of review and

6

seek the legal authority applicable to each error claim. This exercise would impermissibly cast us in the role of Wife's advocate and remove us from our appropriate position of impartiality. *See* **In re Marriage of Spears**, 995 S.W.2d 500, 503 (Mo. App. S.D. 1999) ("An appellate court is not to become an advocate for a party to an appeal").

Points II–V are denied on the ground that they preserve nothing for appellate review.

*Point I – Missouri Court's Statutory Authority to Determine Custody*[3]

Wife's first point claims the trial court lacked "statutory authority to assert jurisdiction because Missouri is not the home state of [Child]." Wife cites the UCCJEA, specifically sections 452.740.1 and 452.705(8), which address when a Missouri court is statutorily authorized to make a child custody determination.[4] Husband rightly responds by contending that Wife has waived this claim.

---

[3] Although Wife's first point also violates Rule 84.04, we exercise our discretion to review it *ex gratia* because, unlike her other points, the violations here are not such that they render us unable to discern the nature of her complaint. *See* **Atkins v. McPhetridge**, 213 S.W.3d 116, 120 (Mo. App. S.D. 2006) ("Notwithstanding non-compliance with Rule 84.04, appellate courts may exercise discretion and attempt to resolve issues on their merits unless the defective point impedes disposition of the case on its merits").

[4] Section 452.740.1 provides:

> Except as otherwise provided in section 452.755, a court of this state has jurisdiction to make an initial child custody determination only if:
>
> > (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months prior to the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
> >
> > (2) A court of another state does not have jurisdiction under subdivision (1) of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 452.770 or 452.775, and:
> >
> > (a) The child and the child's parents, or the child and at least one parent or person acting as a parent have a significant connection with this state other than mere physical presence; and
> >
> > (b) Substantial evidence is available in this state concerning the child's care, protection, training and personal relationships;
> >
> > (3) All courts having jurisdiction under subdivisions (1) and (2) of this subsection

An objection to a court's statutory authority to decide a case is waived if not properly asserted. *See* **Hightower v. Myers**, 304 S.W.3d 727, 733 (Mo. banc 2010) (construing now repealed provisions of the Uniform Child Custody Jurisdiction Act). Indeed, even personal jurisdiction is waived when a party acts inconsistently with a claim that the court lacks personal jurisdiction, **Bland v. IMCO Recycling, Inc.**, 67 S.W.3d 673, 679 (Mo. App. S.D. 2002), and waiver happens in that context when "a party affirmatively seeks relief," acts inconsistently with a claim of no personal jurisdiction, or otherwise obtains something of benefit to herself by participating in the proceeding. **Id.**

Here, Wife filed an answer to Husband's Missouri petition for dissolution, filed her own counter-petition seeking affirmative relief, and appeared by counsel at a hearing, the results of which provided Wife with the benefit of a preliminary grant of "residential custody" of Child, all of which was done without asserting any challenge to the trial court's authority to decide the question of Child's custody. Then, after Husband moved for Wife to be found in contempt, Wife raised for the first time in her motion to dismiss the issue of whether the trial court had such authority under the provisions of the UCCJEA.

Moreover, Wife's own conduct belies the assertion in the argument section of her brief that Florida is Child's "home state." After leaving Florida, Wife attempted to secure

---

have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 452.770 or 452.775; or

(4) No state would have jurisdiction under subdivision (1), (2) or (3) of this subsection.

**"Home state"** is defined by section 452.705(8) as follows:

**"Home state"** means the state in which a child has lived with a parent or a person acting as a parent for at least six consecutive months immediately prior to the commencement of a child custody proceeding. In the case of a child less than six months of age, the term means the state in which the child has lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of such period[.]

8

custody of Child by filing the Texas petition. In doing so, Wife alleged that Child was "not subject to the jurisdiction requirements of *any* Court at this time" (emphasis added), and she made no mention of Florida being Child's "home state."

By participating in the Missouri dissolution case without raising any objection to the trial court's authority to determine child custody until there was an allegation that she had not complied with one of the trial court's rulings, Wife waived any right she might have had to contest the trial court's authority to resolve the issue of child custody.

Point I is also denied, and the judgment of the trial court is affirmed.


DON E. BURRELL, J. - OPINION AUTHOR

MARY W. SHEFFIELD, P.J. - CONCURS

NANCY STEFFEN RAHMEYER, J. - CONCURS